## J. B. COCHRAN ET AL. v. I. KAPNER.

### Decided May 8, 1907.

**1.—Trespass to Try Title—Boundary—Burden of Proof.**

In trespass to try title, the issue being one of boundary, the burden is on the plaintiff to show that he has title to the land claimed by him. ·

**2.—Same—Actual Survey—Presumption.**

The presumption is that the surveyor actually ran upon the ground all the lines called for by him in the field notes certified to by him, and the burden of proving the contrary is upon the party denying this fact.

**3.—Boundary—Evidence.**

In a suit of trespass to try title, the issue being one of boundary, evidence considered, and held insufficient to support the verdict of the jury.

Error from the District Court of Harris County. Tried below before the Hon. Chas. E. Ashe.

*Tharp & Whitehead* and *Ewing & Ring,* for plaintiffs in error.

*W. J. Love, G. J. Kapner* and *R. J. Channell,* for defendant in error.

NEILL, ASSOCIATE JUSTICE.—This suit was originally brought by Conrad Schwartz against J. B. Cochran, and W. J. Settegast in the form of an action of trespass to try title to the following described tract of land: "Beginning at the southeast corner of Koehler's 14 45-100 acre tract out of the northeast corner of lot No. 5 of the west half of Luke Moore league, according to Power's survey, which is in the northwest corner of lot No. 6 according to Trott survey and map. Thence north 70 degrees W. 694 44-100 feet along Koehler's barbwire fence to his southwest corner. Thence north 20 degrees E. 132 feet parallel with said barbwire fence to the southeast corner of subdivision No. 1 of lot No. 5. Thence North 70 degrees W. 137 feet along the south line of said subdivision No. 1 to the northeast corner of subdivision No. 2 of lot No. 5. Thence south 20 degrees W. 2,003 feet along the east line of subdivisions two and three to the southeast corner of subdivision No. 3 on the south line of lot No. 5 of the west half of the Luke Moore league. Thence south 70 degrees W. 851 44-100 feet along said south line to the southeast corner of lot No. 5 of the west half of the Luke Moore league, according to Power's survey. Thence north 20 degrees E. along Power's line to the place of beginning, containing 37 5-100 acres of land and being tract No. 4 in the subdivision of said lot 5 as made in partition

in suit of Thacker v. Thacker, as per map on page 482, volume 8, of the minutes of the Eleventh District Court of Harris County, Texas."

The defendants pleaded not guilty, and, specially, that they "are the owners of 29½ acres out of lot No. 6 of the subdivision of the west half of Luke Moore league, made by Henry Trott, a plat of which is recorded in book C., page 276, record of deeds for Harris County. Beginning at Koehler's southwest corner on the west line of said lot No. 6, Trott survey. Thence south 70 degrees E. along Koehler's south line 250 varas to a stake. Thence south 20 degrees W. 656 varas to the south line of lot No. 6. Thence north 70 degrees W. along the south line of said lot, 6,250 varas to its southwest corner. Thence north 20 degrees E. 656 varas to the place of beginning. Defendants further say that said 29½ acres lie in lot No. 6 of the west half of Luke Moore league according to the Henry Trott survey, and not in lot No. 5." They also disclaimed all the land sued for except the 29½ acres above described.

Pending the suit Schwartz sold the land to I. Kapner, who made himself party plaintiff and the suit was prosecuted in his name. The case was tried before a jury, who returned a verdict in favor of plaintiff, Kapner, for the 29½ acres described in defendants' answer, whereupon judgment was rendered in favor of plaintiff for the 37 5-100 acres sued for, which fixed and established the boundary lines thereof in accordance with the field notes set out in plaintiff's petition.

From this judgment the defendants have appealed, and insist on the following assignment of error: "The court erred in overruling defendants' motion for new trial on the first ground set forth therein, towit: Because the verdict and judgment was wholly against the evidence and was unsupported thereby in this: The jury found by its verdict that the 29½ acres in controversy is located in lot No. 5. The plaintiff and defendants entered into the following agreement: 'It is agreed between plaintiff and defendants that plaintiff has a regular chain of title to the land described in his petition, provided it is located in lot No. 5 of the west half of Luke Moore league, and that defendants have a regular chain of title to the 29½ acres claimed by them in their first amended original answer, if it is in lot No. 6. Both claiming according to the plat recorded in book C., page 276. This agreement has no effect on limitation and applies only to record title.' The evidence conclusively shows that the 29½ acres in controversy is located in lot No. 6, according to the Trott survey and plat referred to in said agreement."

The agreement as copied in the assignment was made between the parties upon the trial. Below is a copy of the plat referred to in the agreement as it appears from the record.

SOUTH 70° EAST  2500 VARS

| | | | | |
|---|---|---|---|---|
| 500 VARS | 500 VARS | 500 VARS | 500 VARS | 500 VARS |

**1**  88½ ACRES

**2**  88½ ACRES

1000 VARS

**10**  148 ACRES

1666⅔ VARS

**11**  148 ACRES

1666⅔ VARS

**12**  148 ACRES

1666⅔ VARS

500 VARS   500 VARS

**3**  88½ ACRES

**4**  88½ ACRES

1000 VARS

500 VARS   500 VARS   500 VARS

500 VARS   500 VARS

**5**  88½ ACRES

**6**  88½ ACRES

1000 VARS

**13**  166 ACRES

1200 VARS

**14**  100 ACRES

1457 VARS

**15**  104 ACRES

1497 VARS

SOUTH 20° WEST 5000 VARS

500 VARS   500 VARS

**7**  138 ACRES

**8**  119 ACRES

1000 VARS

BAYOU

**16**  144 ACRES

**17**  210 ACRES

**18**  200 ACRES

BRAYS

**9**  84 ACRES

1000  VARS   500 VARS   500 VARS   500 VARS

NORTH 70° WEST    2500 VARS

SCALE 400 VARS TO ONE INCH.

"The plat on opposite page represents the west half of Luke Moore's league of land as surveyed by me for the executor of Stephen F. Austin, deceased, June 15, 1838. H. Trott, D. S.

"Recorded Dec. 18, 1838, at 5 o'clock, p. m., by me, J. A. South-wayd, Clk. & Rec. Pro. tem.

"State of Texas,
   "County of Harris,
   "I, Geo. Jones, Clerk of the County Court in and for said State and County, do hereby certify that the above map is a true and correct copy of the plat of the west half of the Luke Moore league of land as the same appears of record in the Deed Records of said County. Vol. 'C,' page 276.

"Witness my hand and the seal of said court at office in the City of Houston, Texas, this 22d day of Dec., 1905.

                 "Geo. Jones, Clerk County Court,
                       "Harris Co., Texas.
               "By. H. L. Washburn, Deputy."

This plat, as is shown by certificate attached, is of the west half of the Luke Moore league, as surveyed by H. Trott on June 15, 1838. The issue, then, is whether the 29½ acres in controversy is on lot 5 or lot 6, as designated on the plat of the survey. If it is on the former, it is, according to the agreement, plaintiff's land and he is entitled to recover; if on the latter he has no such right. The burden of proof is on him to show that such part of the land is on lot 5, according to the plat of the survey made by Trott of the west half of the Luke Moore.

The crucial test of the real location upon the ground of lot No. 5, as well as all other lots designated on the plat, is not where the west line of the Luke Moore was originally run, or whether such original line is the east line of the Tierwester as it was first surveyed or is now recognized; but where was it in fact located by the survey represented by the plat according to which the plaintiff claims? It is true that if the west line of the west half of the Moore survey, as represented on the plat, was in fact run by Trott, or, if run by him, can not be identified, the actual location of the west line of the Luke Moore, if it can be traced as originally run, may be evidence tending to show where the west line according to the plat made by Trott was run, or intended to be placed upon the ground by him. But the identification of the west line of the Luke Moore as it was originally run on the ground would by no means be conclusive that it and the west line as represented on the plat of the survey made by Trott are identical. Therefore, we will not trouble ourselves to ascertain where the west line of the Luke Moore or the east line of the Tierwester (which should be identical) is, as originally run, or with conflicting views of surveyors and others as to where such lines can now be found on the ground; but will direct our attention to the real issue in the case, that is: where are lots 5 and 6 in relation to each other according to the plat of the survey made by H. Trott

on June 15, 1838, of the west half of the Luke Moore survey? It is patent from a glance at the plat that there can be no conflict between these lots if the plat represents the west half of the Luke Moore league of land as *surveyed* by H. Trott for the executor of Stephen F. Austin, deceased, on June 15, 1838. If, then, it was surveyed, as is certified by the surveyor, the 29½ acres in controversy lies wholly in one lot or the other. The burden of proof is upon the plaintiff to show that it lies in lot 5 according to said plat.

If a survey, as represented by the plat, was actually made by Trott, then there is no evidence tending to show that the land in controversy lies in lot 5, as is claimed by plaintiff; but it is unquestionably in lot 6, as is contended by the defendants. Therefore, the solution of the entire controversy depends upon whether the evidence is sufficient to show that the plat does not represent a survey actually made by Trott of the west half of the Luke Moore league. The burden of proving it is upon the plaintiff.

That the plaintiff realizes the determination of the controversy largely depends upon the solution of this question, is shown by his assertion in his brief of this proposition: "There is no evidence that Henry Trott ever went on the ground and established the lines of lots 5 and 6, or any other lines of the subdivision of the west half of the Luke Moore league. The circumstances would tend strongly to show that the map or plat made by Trott was chimney-corner work, and that he never subdivided the land on the ground, or established the lines in accordance with the map made by him. The issue, then, was not where Trott located the lines on the ground, but where a correct survey would place the lines of the subdivision according to the map made by Trott."

In the absence of evidence, the presumption must be indulged that the surveyor actually surveyed all lines called for by him in the survey certified to by him. Maddox v. Fenner, 79 Texas, 279; Stensoff v. Jackson, 89 S. W. Rep., 445. Therefore, the burden of proving that the survey represented by the plat was not made upon the ground, was upon the plaintiff. Worthington v. Baughman, 84 Texas, 480.

While the proposition quoted from plaintiff's brief indicates that his counsel realize the importance of it being shown that no actual survey, as represented by the plat, was made, it at the same time, denotes that they have overlooked the principle that the burden of proving that it was not made on the ground was upon the plaintiff, and not upon the defendant to show that it was. It might be conceded that "there is no evidence" (save the certificate attached to the plat) "that Henry Trott ever went on the ground and established the lines of lots 5 and 6, or any other lines of the subdivision of the west half of the Luke Moore league," yet this would not discharge the burden upon the plaintiff to show that the survey represented by the plat was not actually made by him upon the ground. Nor can we find any evidence that warrants plaintiff's assertion that "the circumstances would tend to show that the map or plat made by Trott was 'chimney-corner' work, and that he never subdivided the land on the ground or established the

lines in accordance with the map made by him." On the contrary, it seems to us that all the circumstances have a different tendency; and that there is not a fact or circumstance developed by the testimony which is at all inconsistent with the theory that the survey was actually made upon the ground as represented by the plat or map. There are circumstances tending to show that the west boundary line of the survey as run by Trott was not the real line of the survey as actually run when originally located. And if the issue was whether the line run by him is the same as the west boundary line of the Moore league and the east boundary line of the Tierwester, there would be some evidence to support plaintiff's theory of this case, for it is apparent from the evidence that the line designated as the Trott line is not the line which plaintiff produced evidence to prove is the west line of the Moore league.

There are two lines, each of which is claimed to be the west line of the Luke Moore league, one designated by the witnesses as the "Trott line" and the other as the "Powers line." The first is claimed to have been run by Trott when he made the survey designated by the plat as the west half of the league. The other was run by Powers in 1860, twenty-two years after Trott made the plat of his survey. The line designated as the Trott line is 125 varas west of the one ran by Powers, which is claimed by the plaintiff to be the west boundary line of the Moore league. If this claim is correct the line recognized as the Trott line is, of course, 125 varas west of the west line of the Moore league and would place the west line of the western tier of the lots, which includes lot 5, that distance upon the Tierwester survey whose east line is the west boundary line of the Moore league. This, however, if the survey was actually made by Trott as indicated by the plat, would not affect the lots in any tier except the western one; for the west line of none of the tiers east of it could be pushed correspondingly further east, but would remain unchanged, each lot retaining its boundary lines as originally run and all the land lying within them. But each of the lots in the western tier, including 5, would lose so much of its land as lay upon the Tierwester. It is for this reason, we have intimated that it can make no difference, so far as the question involved in this case is concerned, whether the line designated as the Trott line is the original west boundary line of the Moore league or not, if Trott actually ran the lines on the ground delineated on the plat of his survey.

As we have said, it must be presumed, in the absence of evidence to the contrary, that Trott did make an actual survey and run the lines on the ground, as indicated by the · plat certified to by him. That he did, is apparent from the plat itself, which, upon its face, bears such inherent evidence of the fact as to render it almost irrefragable. It is inconceivable to us how a survey, which gives course and distance of each line, the bearing trees of the several lots, the distance at which the lines cross a certain stream and the witness trees at the point of crossing, with the minutiae, can be platted without its having been actually made upon the

ground. No, "these things were not done in a corner," but upon the ground with a Jacob-staff, chain and compass.

When Powers, in 1860, undertook to run the lines of the subdivision of the west half of the Luke Moore league made by Henry Trott in 1838, he found and traced an old marked line extending from what he at first took to be the northwest corner, but being unable to find the marks indicative of the line further than 1,800 varas south of such corner, he concluded that there was a mistake somewhere and went 125 varas east of the supposed corner, and found and ran its entire length an old marked line which he took to be the west line of the Luke Moore and the east line of the Tierwester survey. The line Powers first began to run was afterwards traced from the southwest corner by old marks on trees along it by surveyors to where it was lost by him, and taken by them to be the west line of the survey. From the day Powers undertook to make the survey until now, the one line has been called the "Trott line," and the other the "Powers line." And ever since conflicting opinions have been entertained regarding them, it being claimed on the one hand that the Trott line was the true west boundary line of the Luke Moore, and on the other that it is the Powers line. As we have said it is not material to the issue in this case which is the real west boundary line of the Moore league and east boundary line of the Tierwester. But let it be admitted for the sake of argument that it is the Powers line. Then, how is the Trott line accounted for? It was run there as shown by old marks upon trees by which it was traced. Who ran the line and marked it upon the ground? Not the surveyor who located and surveyed the Moore league, for the west line as run by him is, according to what has been conceded, the Powers line, and the survey can have but the one west boundary line. Then, what could have been the purpose or object of running a parallel line 125 varas west of it? For it was not run just for the fun of the thing. Its being there can be accounted for upon no other theory than that it was run there by Henry Trott. Upon what theory does this rest, and why did he run the line? The west half of the Luke Moore league in 1838 belonged to the estate of Stephen F. Austin. Henry Trott was employed that year to run the dividing line between the east and west half of the league and subdivide the half owned by Austin's estate. An old line 2,500 varas east of the line known as the Trott line running parallel with it, is found upon the ground which is, and always has been, recognized as the dividing line between the east and west half of the Moore league. This is not disputed by any one and never has been. The line running east and west of each lot as shown by the plat of the survey made by Trott is 500 varas long, and the lengths of five lots, aggregate 2,500 varas, which make the distance between the division line of the league and the "Trott line," and gives each lot shown upon the plat its complement of land. If the Power's line should be taken as the line run by Trott in making the survey indicated by the plat, as is before shown, this distance of 2,500 varas would not be attained. Hence, the con-

clusion can not be escaped that the line designated as the Trott line is the west boundary line of the west half of the Luke Moore league as surveyed by Henry Trott on June 15, 1838. In view of this, it can make no difference in this case whether any other lines than the one dividing the league and that called the Trott line were run or not when the survey represented by the plat was made. And it might be conceded that in every other respect, it was a "chimney-corner" survey, yet this would not entitle plaintiff to recover as part of lot 5 any land lying more than 500 varas east of the line known as the "Trott line;" for it is the west boundary line of lot 5, according to the plat made by Trott, under which he admittedly holds, and the lot can extend no further east of it than 500 varas. But as before stated, the evidence is amply sufficient to show that the lines of each lot designated on the plat were actually run and marked by Trott upon the ground when he made the survey represented by the plat.

As there is no evidence tending to show that the 29½ acres in controversy is located in lot No. 5 of the west half of the Luke Moore league, as claimed by plaintiff "according to plat recorded in book C., page 276," but, on the contrary, it is conclusively shown that it is located in lot No. 6, according to said plat, the judgment of the district court is reversed, and judgment is here rendered in favor of plaintiff on defendants' disclaimer for all the land described in his petition except the 29½ acres described in defendants' first amended original answer, and as to that land it is ordered adjudged and decreed by this court that the plaintiff take nothing by his suit and that the defendants go hence without day

*Reversed and rendered.*

Writ of error dismissed for want of jurisdiction.