FRANCIS v. PATTERSON.

(Court of Civil Appeals of Texas. Amarillo. Dec. 16, 1911. Rehearing Denied Jan. 26, 1912.)

1. BOUNDARIES (§ 54*)—PRESUMPTIONS—OFFICIAL SURVEY.

In the absence of evidence to the contrary, it must be presumed that an official surveyor, who certified to a legal survey, did his duty by making an actual survey.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. § 274; Dec. Dig. § 54.*]

2. BOUNDARIES (§ 42*)—DETERMINATION—STIPULATIONS—FINDINGS.

Where the lines of a survey were fixed by stipulation of counsel, the question of whether there was an actual survey on the ground is immaterial; and a finding that there was not is improper.

[Ed. Note.—For other cases, see Boundaries, Dec. Dig. § 42.*]

3. BOUNDARIES (§ 37*)—ESTABLISHMENT—EVIDENCE—SUFFICIENCY.

In trespass to try title to land which defendant claimed under a recent patent from the state, evidence held sufficient to support a finding as to the location of a boundary line.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. § 37.*]

4. BOUNDARIES (§ 3*)—DESCRIPTIONS—CALL—CONTROLLING CALLS.

Where the location of a line was fixed by stipulation of counsel, and plaintiff's patent called for that line, that call is controlling over calls for other lines, even though it be not the first call.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3.*]

5. BOUNDARIES (§ 3*)—DESCRIPTION—BEGINNING CALL.

The beginning call of a survey is of no more dignity, as a mere result of being such, than any other.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3.*]

Appeal from District Court, Clay County; A. H. Carrigan, Judge.

Action by D. R. Francis against C. B. Patterson. From a judgment for defendant, plaintiff appeals. Reversed and rendered.

H. L. Stuart, for appellant. Allen & Wantland, for appellee.

GRAHAM, C. J. This suit was in form an action of trespass to try title, begun in the district court of Clay county by D. R. Francis, appellant, against C. B. Patterson, appellee, for the title and possession of 132 acres of land in that county, bounded as follows: "Beginning at the northwest corner of the Orange county school land; thence west 330 vrs.; thence south 2,258 vrs.; thence east 330 vrs. to the west boundary line of Orange county school land survey; thence north with said line 2,258 vrs. to the place of beginning."

The defendant, Patterson, in his answer, pleaded a general denial, not guilty, and especially that he owned the land under and by virtue of a patent issued to him by the state of Texas on September 18, 1903.

The case was tried in the court below before the court without a jury, and a judgment rendered for the defendant and against the plaintiff, from which judgment this appeal is prosecuted.

The statement of facts shows that the following admission was made in open court (and we assume before the introduction of evidence began), to wit: "It was admitted by both plaintiff and defendant in open court that the plaintiff is the owner of the John McCown survey in Clay county, Tex., and that, as to the land in controversy, the only issue is, as to whether or not said land in controversy was a part of the John McCown survey, or whether it was unappropriated public domain, and subject to be patented by the state, on September 18, 1903."

The statement of facts also contains the following: "The following two agreements were then made by the plaintiff and defendant in open court: First. It is agreed that the land in controversy was fenced in 1881 by the Carroll Land & Cattle Company, and was from said time in the actual exclusive and continuous possession of said Carroll Land & Cattle Company and plaintiff, D. R. Francis, who acquired the title of said Land & Cattle Company up to the time it was taken possession of by the defendant about May 1, 1908; said Land & Cattle Company and said Francis claiming to own and using and enjoying same while in their possession. Second. It is further agreed that to run the west line of the Orange county school land from its southwest corner, which is well identified and established on the ground by bearing trees now in existence, north, according to the course and distance given in the field notes for the northwest corner, would place the northwest corner of said Orange county school land at the point testified to by the witnesses, from which Mr. Norman started his survey, and on the east line of the tract of land in controversy, and

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

the northeast corner of the same, and that said northwest corner of Orange county school land is well fixed and identified on the ground." The testimony introduced on the trial shows that the point where Norman started his survey, from under a claim that that point was the northwest corner of the Orange county school land, is the point which appellant claims to be the true northwest corner of the Orange county school land.

It is thus seen that the real issue on the trial below was, and in this court is, whether the true east line of the John McCown survey, from its southeast corner north, is identical with the west line of the Orange county school land, from said point to the northwest corner of the Orange county school land, or is there a vacancy between the west line of the Orange county school land and the east line of the John McCown surveys between said points; and, unless there is a vacancy 330 varas wide between the true east line of the McCown and the true west line of the Orange county school land, from the northwest corner of the Orange county school land to a point in its west line east of the southeast corner of the John McCown survey, the judgment of the trial court cannot be sustained.

At the request of appellant, the trial court prepared and filed in the court below his findings of fact and conclusions of law, to which appellant duly excepted, and brings the case before us on seven assignments of error, the first of which attacks the court's twelfth finding of fact, on the ground that said finding was contrary to and not supported by the evidence introduced. The court's twelfth finding of fact is as follows: "I further find that none of the lines of the Orange county school land were actually run upon the ground, except its south line."

The fourth and fifth assignments, on different grounds, attack the court's sixteenth finding of fact as being contrary to and not supported by the evidence. The court's sixteenth finding of fact is as follows: "I find that the land in controversy was, until same was surveyed for defendant, C. B. Patterson, vacant, unappropriated public domain, and subject to be patented."

The second, third, and seventh assignments, for different reasons, challenge the correctness of the findings of fact found and conclusions of law reached by the trial court, to the effect that the land in controversy was vacant land when patented to appellee on September 18, · 1903; contention being made under said assignments that under the evidence it is conclusively shown that the land in controversy was and is a part of the John McCown survey, and was not vacant and unappropriated land at the time same was patented to appellee on September 18, 1903.

Appellant's sixth assignment is as follows: "As it was agreed in open court, by both plaintiff and defendant, that the west line of the Orange county school land is well established upon the ground, and that the northwest corner of the Orange county school land is well fixed and identified on the ground, and as the field notes of the John McCown survey called for its east line to pass the northwest corner of said Orange county school land, and run thence south with the west line of said Orange county school land to its southeast corner in the west line of said Orange county school land, the land in controversy is and forms a part of the John McCown survey aforesaid; and therefore the court erred in rendering judgment for the defendant for the land in controversy, and should have rendered judgment for the plaintiff for said amount in controversy."

[1] As we view the record in this case, the trial court's twelfth finding of fact is not supported by the evidence introduced on the trial, and appellant's first assignment is therefore sustained.

The field notes of the Orange county school land, as found in the surveyors' records for Clay county, with certificates attached, are as follows:

"Beginning at the N. E. cor. of a survey of two leagues of land for Grayson county at a stake from which a mesquite brs. N. 324 vrs.; also a mesquite brs. S. 17° W. 133 vrs.; thence north, crossing several branches, 10,000 vrs. to corner a mound; thence west, crossing several branches, 10,000 vrs. to cor. a stake in the east line of survey No. 24; thence south, at 600 vrs. passed the southeast cor. of sur. No. 24, at 10,000 vrs. a mound, the N. W. cor. of said Grayson county school land, from which a cluster black jacks brs. s. 83° E. 410 vrs.; thence east on the north line of same 21 vrs. a creek, in all, 10,000 vrs., the beginning. Surveyed June 18, 1855. J. C. Harroll, W. R. Strong, Chairmen.

"I, Wm. Howeth, deputy surveyor for Cook land district, do hereby certify that the foregoing survey was made according to law, and that the limits, boundaries, and corners with marks natural and artificial, are truly described in the foregoing plat and field notes. Wm. Howeth, Dept. Sur. C. L. D.

"I, Daniel Montague, dist. surveyor for Cook land district, do hereby certify that I have examined the foregoing plat and field notes and find them correct, and that they are recorded in my office in Book B, page 562. Given under my hand this August 15, 1855. Daniel Montague, Dist. Sur. C. L. D."

No witness testified that this survey was not actually made on the ground, and we think there is nothing in the record sufficient to overcome the presumption that the surveyor did his duty. In support of this presumption in this case are the certificates, above copied, to the effect that "the survey was made according to law." Boone v. Hunter, 62 Tex. 582; Maddox v. Fenner, 79 Tex.

279, 15 S. W. 237; Thatcher v. Matthews, 101 Tex. 122, 105 S. W. 317; Morgan v. Mowles, 61 S. W. 155.

[2] As we view the agreement of counsel, above copied, as to the true location of the west boundary line, as well as the location of the southwest and northwest corners of the Orange county school land on the ground, the question of whether or not the lines and corners of this survey were originally actually surveyed by the surveyor on the ground becomes immaterial, for the reason that the agreement fixes the true west line, as well as the southwest and northwest corners of this survey, so far as this suit is concerned; and the only purpose an actual survey originally could have served would have been to locate this line and these corners. The other lines and corners in this survey, so far as this suit is concerned, being material only so far as they assist in locating the west line and southwest and northwest corners. Cochran v. Kapner, 46 Tex. Civ. App. 342, 103 S. W. 469.

[3] We think appellant's sixth assignment presents the controlling question on this appeal, and, as his second, third, fourth, fifth, and seventh assignments raise, in different ways, the same legal question as the sixth, a proper disposition of the sixth assignment will also properly dispose of each of the others.

The agreement of counsel, above copied, having established the true location on the ground of the west boundary line of the Orange county school land, as well as the location on the ground of the southwest and northwest corners of that survey, we will now investigate the evidence found in the record, and see if there is any evidence to support the conclusion reached by the trial court that there was a vacancy between the west boundary line of the Orange county school land and the east boundary line of the John McCown survey, between the northwest corner of the first and the southeast corner of the latter, at the time the patent issued to appellee on September 18, 1903.

The field notes of a survey made for John W. Warren, on August 26, 1854, by virtue of a certificate that was thereafter floated, were read in evidence, as follows: "Beginning at the S. E. cor. of a 640-acre survey in the name of Almeron Dickerson; thence south, 950 vrs. to the S. W. cor. of a 320-acre survey in the name of Wilson Crail, 1,900 vrs. cor., a stake in prairie; thence west 1,900 vrs. to stake in prairie; thence north, passing the S. E. cor. of Tom Cook survey, 1,900 vrs., the S. W. cor. of said Dickerson survey; thence east on the south line of same, 1,900 vrs., the beginning."

The field notes of the John McCown survey, together with the certificates of the surveyors, were read in evidence as follows: "Beginning at the S. E. cor. of a 640-acre survey made for Almeron Dickerson; thence south, passing the S. W. cor. of W. W. Crail

and the N. W. cor. of Orange county school land, 3,633¾ vrs. cor. in prairie on the west boundary line of said Orange county school land; thence west 1,900 vrs. a cor. in prairie; thence north, passing S. E. cor. of Thos. Cook, 3,633¾ vrs. in all, the S. W. cor. of A. Dickerson survey; thence east with said A. Dickerson south line, 1,900 vrs., the beginning. Surveyed October 20, 1860. T. R. Gossett & Ben Dickerson, C. C.

"I, Sam Green, county surveyor for Clay county, do hereby certify that the foregoing survey, limits, bounds and corners, with marks, natural and artificial, are herein truly described and the survey made according to law and that they are recorded in my office in Book A, page 157. Given under my hand at office this 25th day of October, 1860. Sam Green, Surveyor Clay County."

The field notes of the Orange county school land, with certificates attached, were introduced as evidence, as copied above in this opinion.

The field notes of a survey made for Washington county, on May 25, 1868, were read in evidence, as follows: "Beginning at the S. W. cor. of John McCown's survey; thence east 1,900 vrs. a pile of stone for corner on the west boundary line of Orange county school land, 2,836 vrs. from its northwest corner; thence south 388¼ vrs. to a pile of stone on said west boundary line; thence west 4,945 vrs. a pile of stone for corner, being southeast corner of survey made in this certificate; thence north 944¼ vrs. a stake; thence east 3,045 vrs. to a stake on the west boundary line of John McCown's survey; thence south 556 vrs. to beginning."

A copy of a portion of a map of Clay county, which shows the west boundary line of the Orange county school land and the east boundary line of the John McCown survey, from the northwest corner of the first to the southeast corner of the latter, to be identical, was introduced in evidence, together with the following certificate attached thereto: "I, J. H. Walker, chief clerk, and Acting Commissioner of the General Land Office of the state of Texas, do hereby certify that the plat hereon is a true and correct copy of a portion of a map of Clay county, dated April, 1874, which said map is now on file as an archive of said office. In testimony whereof I hereunto set my hand and cause to be affixed the impress of the seal of said office this 9th day of August, 1909. J. H. Walker, Acting Commissioner G. L. O."

A copy of a portion of a map of Clay county, which shows the same condition as to the boundary line between the Orange county school land and the McCown, was introduced in evidence, with the following certificate: "I, J. H. Walker, chief clerk and Acting Commissioner of the General Land Office of the state of Texas, do hereby certify that the plat hereon is a true and cor-

rect copy of a portion of a map of Clay county, dated May, 1883, which said map is now on file as an archive of said office. In testimony whereof I hereunto set my hand and cause to be affixed the impress of the seal of said office this 9th day of August, 1909. J. H. Walker, Acting Commissioner G. L. O."

A copy of a portion of a map of Clay county, which also shows the same condition as to the identity of the west boundary line of Orange county school land and east boundary line of the John McCown survey, was introduced in evidence with the following certificate attached: "I, J. T. Robison, Commissioner of the General Land Office of the state of Texas, do hereby certify that the plat hereon is a true and correct copy of a portion of a map of Clay county, dated August, 1896, which said map is not in use in said office as the official map of said county. In testimony whereof I hereunto set my hand and cause to be affixed the impress of the seal of said office this 7th day of August, 1909. J. T. Robison, Commissioner of the General Land Office."

Each of said maps also shows the east boundary line of Washington county survey, above mentioned, to be identical with the west boundary line of the Orange county school land; and said maps each also shows the east lines of the Washington county survey and the John McCown survey and the west line of the Orange county school land, projected on north as a straight line, form the east boundary line of the A. Dickerson survey and the west boundary line of the W. W. Crail survey. In fact, each of said maps shows that the common line between the Orange county school land and the John McCown, when projected in a straight line on north, forms the west boundary line of the Crail, the Stewart, and the east boundary line of the Dickerson and other surveys north of it, mentioned in the evidence, and field notes for which were introduced in evidence.

The field notes of the J. C. Stewart survey, made August 26, 1854, were read in evidence as follows: "Beginning 1,339 vrs. south from N. W. cor. of No. 18 for Almeron Dickerson a pile of stone, from which a small mesquite, marked 'X,' brs. N. 84° W. 85 vrs.; thence west 1,040 vrs. a branch, 2,886 vrs. a pile of stone in mesquite valley, from which a mesquite, marked 'X,' brs. N. 6° W. 60 vrs.; thence south, 2,886 vrs. a stake, from which a po., marked 'X,' brs. south 62° E. 18 vrs.; thence east 2,886 vrs. stake, from which a large mesquite brs. S. 71° E. 37 vrs.; thence 2,886 vrs., crossing the Wichita, place of beginning."

The field notes of the W. W. Crail survey, made August 26, 1854, were read in evidence as follows: "Beginning at the N. W. cor. of a survey in the name of Louis Ledstrand on the south line of a survey in the name of J. C. Stewart; thence west 1,292 vrs. the S. W. cor. of said Stewart survey; thence south on the east line of a survey in the name of Almeron Dickerson, 950 vrs. his southeast cor., 1,398 vrs. a corner, a stake in prairie; thence east 1,292 vrs. to corner, a stake in prairie; thence north 54 vrs., the S. W. corner of said Ledstrand survey, 1,398 vrs., the beginning."

The field notes of the A. Dickerson survey, made June 18, 1855, were read in evidence, as follows: "Beginning at the S. W. cor. of J. C. Stewart's survey; thence south, crossing creek twice, 950 vrs. to corner in creek from which a cottonwood brs. east 11 vrs., another brs. S. 83° W. 20 vrs.; thence west 1,900 vrs. a stake, from which a wild china brs. S. 20° E. 78 vrs.; thence north 1,900 vrs. to a stake, from which a mesquite brs. west 9 vrs.; thence east 1,900 vrs. to a stake on the west line of said survey; thence south 950 vrs. to the place of beginning. Bearings marked 'X.' "

The field notes of many other surveys lying on the east and west sides of the line between the Orange county school land and the John McCown, when projected on a straight line north, were read in evidence; but we think those above given sufficient to show, when considered in connection with the maps above mentioned, that the General Land Office has at all times recognized the correctness of the appellant's contention to the effect that the west boundary line of the Orange county school land and the east boundary line of the John McCown were identical from the northwest corner of the Orange county school land to the southeast corner of the John McCown survey, except in the isolated instance of issuing the patent to appellee.

Appellee bases his contention on the fact that surveyors in recent years have disagreed as to the location of the true southwest corner of the J. C. Stewart and the northwest corner of the W. W. Crail surveys, as well as the location of the true southeast corner of the A. Dickerson. The storm center of the testimony on the trial of this case below apparently was as to the location of the true southeast corner of the A. Dickerson; appellant's evidence being intended to show that the southeast corner of the A. Dickerson was 330 varas west of the west line of the Orange county school land, if projected in a straight line north; while appellant's testimony was intended to show that said corner would be on said line.

Without discussion in detail the evidence on the issue as to where the true location of the southeast corner of the A. Dickerson survey is on the ground, we think the testimony preponderates on this issue in favor of its being where appellant contends, for the reason that all the evidence shows a large cottonwood tree to be standing about where the field notes locate it, if the corner be where appellant claims it to be; while, to sustain appellee's contention, we must assume that

the surveyor did not know the creek from the river, and made a mistake in his calls in this respect in running the east line of the A. Dickerson survey. Appellee's evidence also fails to show any such bearing trees, or any other bearings, where he claims the corner to be, as are called for in the field notes.

In the light of the field notes of the Warren Orange county, the John McCown and Washington county surveys, when read in connection with the maps introduced in evidence, we think it is conclusively shown that the state has at all times recognized the west boundary line of the Orange county school land as being identical with the east boundary line of the John McCown, and that therefore there was no vacant land between said surveys; and therefore we conclude that the state intended to convey, and that John McCown thought he was acquiring by the field notes of the patent to the McCown survey, all the land west of the west boundary line of the Orange county school land from the northwest corner thereof to the southeast corner of the John McCown, and west to the Thomas Cook survey, according to the field notes of the McCown survey, as introduced in evidence.

[4, 5] The agreement found in the record having fixed on the ground the west line of the Orange county school land, and the field notes of the McCown calling, as it does, for this line as its east boundary and southeast corner, we think this call must prevail over the uncertain evidence introduced on the trial as to where the southeast corner of the A. Dickerson, which is also the northeast corner of the McCown, is actually located on the ground, especially as the beginning call in a survey is of no more dignity, as a mere result of being such, than any other in the field notes. Lilly v. Blum, 70 Tex. 704, 6 S. W. 279.

For the reason that we think the evidence introduced on the trial was such as to require at the hands of the trial court a judgment for the land in controversy for the appellant, the judgment of the court below will be reversed, and judgment will here be rendered for appellant for the title and possession of the land described in appellant's pleadings, including a writ of possession and all costs of this appeal, as well as the costs below, and it is so ordered.